UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FULVIO FLETE-GARCIA,

*Plaintiff*,

v.

UNITED STATES MARSHALS SERVICE,

*Defendant.*

Civil Action No. 18-2442 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Fulvio Flete-Garcia is a federal prisoner who was at one point housed at Massachusetts Correctional Institution Cedar Junction at Walpole ("MCI Cedar Junction") in South Walpole, Massachusetts. Defendant United States Marshals Service ("USMS") is a component of the Department of Justice tasked with a variety of court-related duties, including the transportation of federal detainees. *See* 28 U.S.C. § 566. In July 2018, Plaintiff submitted two duplicative requests to the USMS for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* The first request sought the dates and times of Plaintiff's transportation between MCI Cedar Junction and the federal courthouse between May 4, 2015 and January 17, 2018 and specified that the records could be located at MCI Cedar Junction, Dkt. 28 at 6; the second request sought the same records but specified that they were located at the USMS's office in Washington, D.C., Dkt. 1 at 10. In response to the first request, the USMS contacted its Prisoner Operations Division ("POD") to seek responsive records and searched one database. POD located no responsive records. Dkt. 28 at 2 (Krieger Decl. ¶ 6). The database turned up five responsive pages, *id.* (Krieger Decl. ¶ 7), and the USMS redacted personal information prior to releasing those pages to Plaintiff on or about October 19, 2018, Dkt. 19-4.

Upon receiving Plaintiff's second request, the USMS determined that the request was duplicative of the first, and because the USMS had already responded to the first request, it took no further action with respect to the second. *Id.* at 2 (Krieger Decl. ¶¶ 10–13). After Plaintiff brought suit, however, the USMS asked its District Office for District of Massachusetts whether that office possessed any potentially responsive records; the office responded that searching for responsive documents there would be futile. *Id.* at 3 (Krieger Decl. ¶ 13).

On October 3, 2018, prior to the USMS's release of the five pages it deemed responsive, Plaintiff filed the instant action, alleging that Defendant violated FOIA by inadequately searching for and withholding records responsive to his request. Dkt. 1. The USMS's motion to dismiss or, in the alternative, for summary judgment, Dkt. 20, and Plaintiff's cross-motion for summary judgment, Dkt. 25, are now before the Court. For the reasons explained below, the Court will grant in part and deny in part the USMS's motion for summary judgment and will deny Plaintiff's cross-motion without prejudice.

## I. BACKGROUND

On or about July 12, 2018, Plaintiff sent his first FOIA request to the USMS. Dkt. 1 at 2, 6–7. That request sought "records indicating the dates, days and the times [he] was transported [to] the Federal Court House for court appear[a]nces from May 4, 2015 to January 17, 2018," and indicated that "[t]he records [requested] can be found at the[] following federal deten[t]ion center[]: MCI C[edar] J[unction] [at] Walpol[e]." *See id.* at 6. Less than a week later, Plaintiff submitted his second FOIA request, which sought the same information but specified that "[t]he records . . . are in the custody and control of the [M]arshals [S]ervice office in [W]ashington[,] D.C." *Id.* at 10.

By October 3, 2018, Plaintiff had not received a substantive response to either request, so he filed this lawsuit seeking relief under FOIA.[1] *See* Dkt. 1 at 3–5 (citing and discussing 5 USC § 552 (a)(1)(6)(A)(i)). The following day, the USMS contacted its Prisoner Operations Division for assistance in locating records related to Plaintiff, but "POD was unable to locate any records related to [Plaintiff]." Dkt 28 at 2 (Krieger Decl. ¶ 6). The USMS's FOIA personnel then searched the Justice Detainee Information Population Management/Prisoner Tracking System database, "which includes [the] USMS Warrant Information Network System and the Prisoner Population Management/Prisoner Tracking System" and found five pages "responsive to Mr. Flete-Garcia's request." *Id.* (Krieger Decl. ¶ 7). These five pages comprised Flete-Garcia's "USM-129 Individual Custody/Detention Report," which included his identifying information, medical information, immigration information, and "custody information." Dkt. 28 at 10–14. On October 19, 2018, the USMS released those five pages to Plaintiff with certain personal information redacted and explained that the redactions were made pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(F). Dkt. 28 at 8–10. On October 24, 2018, Plaintiff filed an administrative appeal, arguing that the USMS did not conduct an adequate search. Dkt. 8 at 1, Dkt. 28 at 2 (Krieger Decl. ¶ 8); *see also* 5 USC § 552 (a)(3)(A).

The USMS treated Plaintiff's second FOIA request as a "duplicate" of the first, and, because it determined that it "had already provided all information in USMS custody," it

---

[1] Plaintiff's initial filing in this action was styled as a "petition for preliminary injunction," which contained within it "Complaint No. 1" and "Complaint No. 2." Dkt. 1 at 1–3. The parties have litigated this case as if it involved a standard FOIA complaint, not a motion for preliminary injunction. To the extent that Plaintiff did intend to seek a preliminary injunction in this case, that motion is hereby denied because Plaintiff has failed to carry his burden of establishing irreparable injury. *See CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (holding that a moving party's failure to make a showing of irreparable injury "alone is sufficient" to deny a motion for a preliminary injunction).

released no further records in response to the second request. Dkt. 28 at 2 (Krieger Decl. ¶ 10–12). After Plaintiff brought this suit, Clifford R.R. Kreiger, an Associate General Counsel for Defendant, "contacted the USMS District Office for the District of Massachusetts, which is the USMS office responsible for Federal detainees in Massachusetts." *Id.* at 1, 3 (Krieger Decl. ¶¶ 1, 13). Krieger attests that "[t]he FOIA contact for that office informed [him] that they do not keep records indexed by names of prisoners and that any records they would have regarding Mr. Flete-Garcia would just show accounting data used for reconciling the billing for the use of the Massachusetts detention facility, which is not respons[ive] to Mr. Flete-Garcia's request." *Id.* at 3 (Krieger Decl. ¶ 13).

In April 2019, the USMS moved to dismiss, or in the alternative, for summary judgment, arguing that it conducted an adequate search and that the redactions it made were warranted under several FOIA exceptions. *See* Dkt. 20. Plaintiff opposed that motion in September 2019, Dkt. 23, and, after the Court ordered that the USMS file its opposition or reply, if any, on or before October 16, 2019, Minute Order (Oct. 2, 2019), the USMS elected to rest on its opening brief.

## II. LEGAL STANDARD

The Freedom of Information Act is premised on the notion that "an informed citizenry" is "vital to the functioning of a democratic society [and] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Act embodies a "general philosophy of full agency disclosure." *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976)). The law, accordingly, requires that agencies engage in reasonably robust searches for potentially responsive records and that they disclose the records they find unless

4

those records fall within one of nine exclusive statutory exemptions. *See Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (searches must be "reasonably calculated to uncover *all* relevant documents") (emphasis added)); *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Under Federal Rule of Civil Procedure 56(a), the moving party bears the burden of showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA action, the agency may meet its burden by submitting declarations that are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted), and an index of the information withheld, *see Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973). Although an agency need not "search every record system," it must search those systems "that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir.1990). "[T]o obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.*

### III. ANALYSIS

The USMS maintains that it conducted a reasonable search for responsive records and that all of its redactions are supported by applicable FOIA exemptions. Dkt. 20 at 8. Plaintiff opposes the USMS's motion and cross-moves for summary judgment, arguing that the five pages that the USMS released were "not responsive to" his FOIA requests and, more importantly, that the USMS did not conduct a reasonable search. Dkt. 25 at 8. As explained below, the Court

concludes that the USMS has yet to offer evidence regarding the nature and extent of its search sufficient to permit the Court to determine whether the search was adequate. The Court is persuaded, however, that the USMS permissibly redacted certain personal information from the five pages that it released pursuant to FOIA Exemption 7(C).

**B.      Adequacy of the Search**

An agency fulfills its obligations to conduct an adequate search "if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). Although the search need be "perfect" and the agency need not "search every record system," the search must constitute "a good faith, reasonable search of those systems of records likely to possess the requested records." *Heartland Alliance for Human Needs & Human Rights v. U.S. Immigration & Customs Enf't*, 406 F. Supp. 3d 90, 110 (D.D.C. 2019) (quotation marks and citations omitted). Most importantly for present purposes, the affidavits and declarations offered to demonstrate the reasonableness of the search must be "'relatively detailed' and nonconclusory and . . . submitted in good faith.'" *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citations omitted). Agencies' accounts of their searches often include detailed descriptions of their various databases, the kinds of information that those databases store, "the search terms used[,] and the specific files searched for each request." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 293 (D.D.C. 2007); *see also, e.g.*, *Heartland All.*, 406 F. Supp. 3d at 116 (detailing search terms used while performing the searches); *Abdeljabbar v. atf*, 74 F. Supp. 3d 158, 169 (D.D.C. 2014) (quoting portions of an agency declaration describing in detail a case management system and a database); *Ferranti v. ATF*, 177 F. Supp. 2d 41, 47 (D.D.C.

6

2001) ("Affidavits that include search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient."). Ultimately, the adequacy of the search is "dependent upon the circumstances of the case" and measured by a "standard of reasonableness." *Weisberg*, 705 F.2d at 1351 (citations omitted).

Once the agency has proffered "'relatively detailed and nonconclusory'" declarations describing its search, the burden shifts to the FOIA requester to "produce countervailing evidence" sufficient to establish a genuine dispute of material fact as to the adequacy of the search. *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (citation omitted). Such evidence might include "problems with . . . the specific search terms used or the inadequacy of the particular locations searched." *Heartland All.*, 406 F. Supp. 3d at 110. Courts afford agencies' declarations "a presumption of good faith," however, and that presumption "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

The USMS's response to Flete-Garcia's FOIA requests is described in the declaration of Clifford R.R. Krieger, a USMS Associate General Counsel "tasked with reviewing and responding to the present litigation."[2] Dkt. 28 at 1 (Krieger Decl. ¶ 1). Krieger describes two searches. First, Krieger attests, "USMS personnel contacted the [agency's] Prisoner Operations Division ('POD') which is the part of USMS which is responsible for oversight of federal detainees, including Mr. Flete-Garcia." *Id.* at 2 (Krieger Decl. ¶ 6). The POD, however, "was

---

[2] The Court collectively analyzes the USMS's searches in response to Plaintiff's two FOIA requests, which both sought the same information but specified that the information was located in two different locations. *See* Dkt. 1 at 6, 10.

7

unable to locate any records related to Mr. Flete-Garcia." *Id*. Second, the "USMS FOIA personnel . . . searched the Justice Detainee Information Population Management/Prisoner Tracking System database [("Detainee Information System")], which includes [the] USMS Warrant Information Network System and the Prisoner Population Management/Prisoner Tracking System." *Id.* (Kreiger Decl. ¶ 7). That search located five pages of "responsive" records, which the USMS released to Plaintiff with redactions, as discussed below. *Id.* Krieger attests, "[b]ased upon my review of Mr. Flete-Garcia's FOIA request as well as the documents provided by POD, I was satisfied that the Agency thoroughly searched for responsive records in all places related" to his FOIA request.[3] *Id.* (Krieger Decl. ¶ 9). Finally, apparently after Plaintiff brought suit, Krieger made a further effort to locate potentially responsive records by contacting "the USMS District Office for the District of Massachusetts, which is the USMS office responsible for Federal detainees in Massachusetts." *Id.* at 3 (Krieger Decl. ¶ 13). "The FOIA contact for that office informed" Krieger that the office "do[es] not keep records indexed by names of prisoners and that any records they would have regarding Mr. Flete-Garcia would just show accounting data used for reconciling the billing for use of the Massachusetts detention facility." *Id.* (Krieger Decl. ¶ 13). That is all that the Krieger declaration—and the USMS more generally—says about its effort to search for responsive records.

This account of the searches conducted "leaves substantial doubt as to [their] sufficiency," *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 183 (D.D.C. 2011) (citation omitted), because it does not "explain in reasonable detail the scope and method of the search[es],"

---

[3] The declaration's use of the "POD" here is likely in error because the Krieger declaration states that the search of the POD produced no documents, but the search of the Detainee Information System located the five pages that the USMS released to Plaintiff. *See* Dkt. 28 at 2 (Krieger Decl. ¶¶ 6–7).

*Abdeljabbar*, 74 F. Supp. 3d at 168. Simply naming databases and stating that they were "searched" does not suffice. *See People for the Am. Way Found.*, 503 F. Supp. 2d at 294 (concluding that affidavit describing searches was insufficient to prevail on summary judgment where it "neither identified what search terms were used" nor "identified why the scope of the defendant's search was limited to the files or personnel listed."). Krieger's "satisf[action]" with the searches, Dkt. 28 at 2 (Krieger Decl. ¶ 9), moreover, cannot substitute for the Court's, nor does his declaration provide the Court any detail regarding search terms or methodologies, possible custodians, or whether additional databases or files might contain the requested records. Krieger's sparse description of his contact with the USMS District Office in Massachusetts, moreover, does not fill this gap. He does not indicate to whom he spoke or what he asked of that person. The fact that the office does not "keep records indexed by names of prisoners" does not mean that the office does not possess the records Plaintiff sought, and the fact that any records regarding Plaintiff "would just show accounting data used for reconciling the billing for use of the Massachusetts detention facility," *id*. at 3 (Kreiger Decl. ¶ 13), does not foreclose the possibility that those billing records might show if, and when, Plaintiff was transported between MCI Cedar Junction and the federal courthouse.

Overall, the USMS's evidence merely shows that (1) someone contacted the POD, which conducted a search of unidentified files using unidentified search criteria; (2) someone searched the Detainee Information System database, using unidentified search terms and specifications; and (3) Krieger "contacted" someone in the agency's Massachusetts office, and that person indicated that the office did not keep records indexed by names of prisoners and, instead, only had accounting data. The existing record, in short, does not provide the type of "relatively

9

detailed and nonclusory" evidence necessary to establish the adequacy of the search. *Morley*, 508 F.3d at 1116.

Although unnecessary to support the Court's conclusion, Plaintiff casts further doubt on the sufficiency of the USMS's showing in two respects. First, he offers his own "unsworn declaration under the penalty of perjury p[u]rsuant to 28 U.S.C. [§] 1746," which asserts that "[t]he Marshals informed [him] that the orders to transport prisoners originate[] at the USMS [D]istrict [O]ffice for the [D]istrict of Massachusetts" and are electronically "transmitted to MCI Cedar Junction [o]fficials," Dkt. 25 at 16. Second, he offers records showing the dates and times he was transported from MCI Cedar Junction to court and back. Dkt. 23-1 at 9–23 (Exhs. C–E). Although there is no reason to conclude that the USMS maintained copies of these records, in the absence of any explanation, the Court is left to wonder (1) whether Plaintiff is correct that the USMS issued the orders for his transportation; (2) if so, whether it maintained copies of those orders; and (3) more generally, whether the USMS has any system or database for recording when, and under what circumstances, prisoners subject to the agency's control are transported. It may be that the USMS never maintained the records Plaintiff seeks or that it disposed of those records at some time. But, based on the barebones declaration the USMS proffers in support of its motion, the Court cannot determine whether the agency conducted an adequate search.

The Court will, accordingly, deny both the USMS's motion for summary judgment and Plaintiff's cross-motion for summary judgment regarding the adequacy of the search. The USMS may either move again for summary judgment, supplementing the Krieger declaration with additional information to better explain the searches already performed, or it may conduct additional searches in response to Plaintiff's FOIA requests. Either way, if and when the USMS

renews its motion, it will need to set forth sufficient information to address Plaintiff's proffered evidence concerning the USMS's role in ordering the transportation of federal detainees from MCI Cedar Junction to the federal courthouse and will need to explain whether it maintains records of those transfers and, if so, how and where those records are maintained.

## B. FOIA Exemptions Claimed

In moving for summary judgment with respect to its redactions of the five pages it released, the USMS must offer supporting declarations and exhibits that "describe the requested documents and 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by bad faith.'" *Pronin v. Fed. Bureau of Prisons*, 17-1807, 2019 WL 1003598, at *3 (D.D.C. Mar. 1, 2019) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)); *see also Vaughn*, 484 F.2d at 827–28. The Court will grant summary judgment based on those declarations only if they "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987).

Here, the USMS argues that it made the redactions pursuant to FOIA Exemptions 6, 7(C), and 7(F). Plaintiff does not address the propriety of the redactions, apparently because he does not believe that the five pages the USMS released were, in any event, responsive to his requests. Dkt. 25 at 23. But the Court cannot deem a motion for summary judgment "conceded" due to lack of opposition and must, instead, evaluate "for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (second quote quoting *Grimes v. District of Columbia*, 794 F.3d

11

83, 97 (D.C. Cir. 2015) (Griffith, J., concurring)). Because the Court concludes that the USMS permissibly redacted the information pursuant to Exemption 7(C), it need address only that exemption. *See Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 351–52 (D.D.C. 2018) (observing that an agency "may withhold documents or portions thereof as long as one exemption applies").

Under 5 U.S.C. § 552(b)(7), "FOIA exempts from disclosure six categories of documents that have been 'compiled for law enforcement purposes.'" *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting 5 U.S.C. § 552(b)(7)(A)–(F)). Exemption 7(C) "bars disclosures that 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Id.* at 33 (quoting 5 U.S.C. § 552(b)(7)(C)). To determine whether an agency lawfully withheld or redacted records pursuant to Exemption 7(C), the Court must first determine whether the records were compiled for law enforcement purposes and, if so, it must then balance the privacy interest asserted against the "public interest in disclosure and determine[] whether the interest is strong enough to warrant an invasion of the privacy interest at stake." *Taplin ex rel. Lacaze v. U.S. Dep't of Justice*, 967 F. Supp. 2d 348, 354 (D.D.C. 2013).

In assessing whether records were compiled for law enforcement purposes, "it is not the nature of the agency that controls, but the character of the records withheld." *Elkins v. FAA*, 99 F. Supp. 3d 90, 98 (D.D.C. 2005). If an agency's "principal function is law enforcement," however, the agency's claim that the records at issue clear Exemption 7's threshold requirement is entitled to some deference. *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014). Here, "[t]he USMS is a law enforcement agency within the Department of Justice responsible for . . . the protection of Federal jurists, court officers, and other persons," among other duties, Dkt. 28 at 3

12

(Krieger Decl. ¶ 15), so the Court affords some deference to its assertion that the records in question were compiled for law enforcement purposes, *id.* (Krieger Decl. ¶ 16). More importantly, the redacted records were "compiled by the USMS" in order to facilitate its own "handling of federal detainees," *id.* (Krieger Decl. ¶ 16), which is undoubtedly a law enforcement purpose, *see McCall v. U.S. Marshals Serv.*, 36 F. Supp. 2d 3, 6 (D.D.C. 1999) (concluding that documentation of Marshals "[e]scorting federal prisoners within a federal courthouse" were compiled for law enforcement purposes). Plaintiff does not dispute this factual premise, and the Court, accordingly, concludes that the threshold requirement is satisfied.

The Court is also persuaded that the USMS permissibly redacted information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In resolving that question, the Court "must balance the public interest in disclosure against the [privacy] interest[s] Congress intended the Exemption to protect." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989). As the uncontroverted record demonstrates, that balance tilts decidedly in favor of nondisclosure.

As the Krieger declaration explains, the USMS applied Exemption 7(C) "to withhold the names and/or contact information of law enforcement personnel and prisoners unrelated to Plaintiff," Dkt. 28 at 3 (Krieger Decl. ¶17), including those "who were to be kept separate from [Plaintiff] while in custody," *id.* (Krieger Decl. ¶ 14). The *Vaughn* index, in turn, identifies the following, specific redactions the USMS made pursuant to exemption (b)(7)(C): the "[n]ame[s] of persons to be housed separate[ly] from Mr. Flete-Garcia," the "[n]ame of law enforcement officer who administered a DNA test," the "[n]ame and phone number of [an] INS agent," and an "[u]nidentified address and phone number." *Id.* at 3–4 (Krieger Decl. ¶ 19). The disclosure of personal identifying information can "create[] a palpable threat to privacy." *Carter v. U.S. Dep't*

13

*of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987). "Low-level [government] personnel," moreover, "have at least some privacy interest in their names," *Cause of Action Inst. v. U.S. Dep't of the Army*, No. 16-1020, 2019 WL 4750213, at *9 (D.D.C. 2019) (collecting cases), and, indeed, "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant," *Nat'l Ass'n of Ret. Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).

On the other side of the balance, Plaintiff does not identify *any* public interest in release of the withheld information. "Where there is *no* asserted public interest, even the slightest privacy interest will prevent disclosure under Exemption 7(C)," *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008), and, here, the privacy interest is significant. The Court, therefore, concludes that the privacy interests at stake here outweigh the public interest in release of the redacted information.

Accordingly, the Court will grant USMS's motion for summary judgment with respect to the redactions of the five released pages.

## C. Segregability

"[W]ith regard to any document an agency believes falls under a FOIA exception, the agency must "separate[] the exempt from the non-exempt portions of the document, and produce[] the relevant non-exempt information.'" *People for the Am. Way Found.*, 503 F. Supp. 2d at 296 (quoting *Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 108 (D.D.C. 2005)). The Court, for its part, "make specific findings of segregability." *Stolt-Nielsen Transp. Grp., Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008). Here, because the five pages produced to Plaintiff were the only responsive documents located in the USMS's search, and the only information withheld is the personal information discussed above, the Court finds that the

USMS "has met its burden to disclose all reasonably segregable information" within those five pages. *Willis*, 581 F. Supp. 2d at 77.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment, Dkt. 20, is hereby **GRANTED** in part and **DENIED** in part, and Plaintiff's cross-motion for summary judgment, Dkt. 26, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: April 7, 2020