UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FULVIO FLETE-GARCIA, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES MARSHALS SERVICE, <br><br> *Defendant*. | Civil Action No. 18-2442 (RDM) |

## MEMORANDUM OPINION AND ORDER

This case concerns the adequacy of the response by Defendant United States Marshals Service ("USMS") to two Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, records requests submitted by Plaintiff Fulvio Flete-Garcia, a federal prisoner proceeding *pro se*. The USMS previously moved for summary judgment, Dkt. 20, and the Court granted in part and denied in part that motion, *Flete-Garcia v. USMS*, No. 18-2442, __ F. Supp. 3d__, 2020 WL 1695127, at *7 (D.D.C. Apr. 7, 2020) ("*Flete-Garcia I*").[1] In particular, the Court was persuaded that the USMS properly invoked FOIA Exemption 7(C) to redact certain material but was unpersuaded that the USMS had conducted an adequate search for responsive records. *Id.* at *5. In the same decision, the Court denied Plaintiff's cross-motion for summary judgment. *Id.* at *1.

---

[1] Although the USMS characterized both its previous motion and this motion as "motion[s] to dismiss Plaintiff's complaint, or in the alternative, for summary judgment," Dkt. 20; Dkt. 34, the USMS filed an answer to the complaint prior to filing the motions, Dkt. 15, foreclosing dismissal pursuant to Federal Rule of Civil Procedure 12(b), *see* Fed. R. Civ. P. 12 (b) (stating that defenses "must be made before pleading if a responsive pleading is allowed"); s*ee also Lockhart v. Coastal Intern. Sec., Inc.*, 905 F. Supp. 2d 105, 112 (D.D.C. 2012). The Court therefore treats the pending motion as one for summary judgment, as it did the previous motion. *See Flete-Garcia I*, 2020 WL 1695127, at *2–3.

The USMS subsequently conducted a new search and released a handful of additional records to Plaintiff. Dkt. 34 at 5, 8 (SUMF ¶¶ 6, 16). In light of that further effort, the USMS now renews its motion for summary judgment. *Id.* This time around, the USMS comes closer to carrying its burden. One remaining question, however, will prevent the Court from entering judgment in favor of the USMS. The Court will, accordingly, **GRANT** in part and **DENY** in part the USMS's motion.

## I. BACKGROUND

In July 2018, Plaintiff sent "two duplicative [FOIA] requests to the USMS," which handles the transportation of federal detainees. *Flete-Garcia I*, 2020 WL 1695127, at *1. In both requests, Plaintiff sought "the dates and times of Plaintiff's transportation between [Massachusetts Correctional Institution Cedar Junction at Walpole ("MCI Cedar Junction")] and the federal courthouse between May 4, 2015 and January 17, 2018." *Id.* The only material difference in the two requests is that the first request "specified that the records could be located at MCI Cedar Junction," while the second request specified that the records "were located at the USMS's office in Washington, D.C." *Id.* After receiving no substantive response from the USMS, Plaintiff brought this action in October 2018. *Id* at *2; Dkt. 1.

Shortly after this action was filed, the USMS conducted a search for responsive records, treating the two duplicative requests as a single request, and it released a five-page, partially redacted "USM-129 Individual Custody/Detention Report" to Plaintiff. *Flete-Garcia I*, 2020 WL 1695127, at *2. Then, "[i]n April 2019, the USMS moved . . . for summary judgment, arguing that it [had] conducted an adequate search and that the redactions it made were warranted under several FOIA exceptions." *Id.*; *see also* Dkt. 20. Plaintiff opposed the motion and cross-moved for summary judgment. Dkt. 23; Dkt. 24.

2

With respect to the one document that was located and released in part, the Court concluded that the USMS's redactions—which included "withhold[ing] the names and/or contact information of law enforcement personnel and prisoners unrelated to Plaintiff, . . . including those who were to be kept separate from [Plaintiff] while in custody," *Flete-Garcia I*, 2020 WL 1695127, at *7 (quotation omitted)—were permissible pursuant to Exemption 7(C), which exempts disclosures "that 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,'" in records "'compiled for law enforcement purposes.'" *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 33 (D.C. Cir. 1998) (quoting 5 U.S.C. § 552(b)(7)(C)); *id.* at 31 (quoting 5 U.S.C. § 552(b)(7)(A)-(F)). The Court, accordingly, granted summary judgment in favor of the USMS as to the lawfulness of the redactions. *Flete-Garcia I*, 2020 WL 1695127, at *7.

The Court was unpersuaded, however, that the "barebones declaration [that] the USMS proffer[ed] in support of its motion" satisfied the agency's burden of showing that it had conducted an adequate search for other records. *Id.* at *5. As explained in the declaration that the agency submitted in support of its motion, USMS personnel had contacted the agency's Prisoner Operations Division ("POD"), which oversees federal detainees, and that office was unable to locate any records relating to Plaintiff. *Id.* at *4. In addition, USMS FOIA personnel searched the Justice Detainee Information Population Management/Prisoner Tracking System database ("JDIS"), which itself contains more than one database, including the USMS Warrant Information Network System and the Prisoner Population Management/Prisoner Tracking System. *Id.* That search located the five pages responsive to Plaintiff's request. *Id.* The declarant, USMS Associate General Counsel Clifford R.R. Kreiger, also contacted the USMS District Office for the District of Massachusetts, which indicated that it did not keep records

indexed by names of prisoners and that any records it maintained on Plaintiff would be related to accounting data. *Id.*

The Court concluded that the USMS was not entitled to summary judgment with respect to the adequacy of its search because the Krieger declaration had failed to describe "'in reasonable detail the scope and method of the search[es]'" that the agency conducted. *Id.* (quoting *Abdeljabbar v. Bureau of Alcohol, Tobacco and Firearms*, 74 F. Supp. 3d 158, 168 (D.D.C. 2014)). The declaration omitted "any detail regarding search terms or methodologies, possible custodians, or whether additional databases or files might contain the requested records." *Id.* It also did not specify whom Krieger contacted at the USMS District Office in Massachusetts or what he asked that person to do, and it did not explain why the fact that the District Office does not "keep records indexed by name of prisoners" meant that the office had no records responsive to Plaintiff's FOIA request. *Id.* As the Court summarized:

> Overall, the USMS's evidence merely shows that (1) someone contacted the POD, which conducted a search of unidentified files using unidentified search criteria; (2) someone searched the Detainee Information System database, using unidentified search terms and specifications; and (3) Krieger "contacted" someone in the agency's Massachusetts office, and that person indicated that the office did not keep records indexed by names of prisoners and, instead, only had accounting data.

*Id.* at *5. The Court accordingly denied the USMS's motion for summary judgment, but also denied Plaintiff's cross-motion for summary judgment, noting that the USMS could supplement the Krieger declaration with additional information or conduct additional searches in response to Plaintiff's FOIA request. *Id.*

The USMS opted to conduct a new search. Dkt. 34 at 5 (SUMF ¶ 6). That new search located "additional and more responsive data." Dkt. 34-1 at 3 (2d Krieger Decl. ¶ 9). In addition to the five-page USM-129 Individual Custody/Detention Report that the USMS's first search had

4

identified, the new search found a one-page database printout logging twenty-three occasions when Plaintiff was transported by the USMS between May 4, 2015 and January 17, 2018, *id.* at 6–7 (2d Krieger Decl. ¶ 20); Dkt. 36-1 at 1 (Ex. A).  That is precisely the information that Plaintiff sought in his FOIA requests.  In addition, the USMS's supplemental search located two documents that the agency deemed "not responsive" but nonetheless released to Plaintiff "out of an abundance of caution:" (1) a "USMS Subject Report" and (2) a "USM-312" Personal History record,  Dkt. 34-1 at 8 (2d Krieger Decl. ¶ 25); Dkt. 36-2 at 5–7, 13–15 (Ex. B).   The USMS redacted parts of these documents pursuant to FOIA Exemptions 6, 7(C), (E), and (F).  Dkt. 34 at 14; 5 U.S.C. § 552(b)(6), (7)(C), (E) & (F).  "On April 22, 2020, the USMS, Office of General Counsel, sent the updated search results to the USMS District Office for the District of Massachusetts with a request that they mail them to" Plaintiff.  Dkt. 34-1 at 8 (2d Krieger Decl. ¶ 26); *see also* Dkt. 36-2 (Ex. B).

Having completed its supplement search, the USMS renewed its motion for summary judgment in July 2020, Dkt. 34, and the Court issued a *Fox/Neal* Order instructing Plaintiff to respond to the motion on or before August 11, 2020, Dkt. 35, a date also specified in the Court's June minute order setting the briefing schedule, Minute Order (June 22, 2020).  If Plaintiff failed to respond, the order explained, the Court would "accept as true any factual assertion supported by . . . evidence submitted with [the USMS's] motion." Dkt. 35 at 2.  Over six months have now passed, and Plaintiff has not complied with the Court's order and has not responded to the USMS's renewed motion.

## II.  LEGAL STANDARD

The Freedom of Information Act "embodies a 'general philosophy of full agency disclosure.'"  *Flete-Garcia I*, 2020 WL 1695127, at *2 (quoting *U.S. Dep't of Def. v. FLRA*, 510

U.S. 487, 494 (1994)). "The law, accordingly, requires that agencies engage in reasonably robust searches for potentially responsive records and that they disclose the records they find unless those records fall within one of nine exclusive statutory exemptions." *Id.* "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Under Federal Rule of Civil Procedure 56(a), a summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it is capable of affecting the outcome of a dispute, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if the evidence is such that a reasonable factfinder—here, the Court—could find in favor of the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 380 (2007). "In a FOIA action, the agency may meet its burden by submitting declarations that are 'relatively detailed and non-conclusory.'" *Flete-Garcia I*, 2020 WL 1695127, at *3 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Although an agency need not "'search every record system,' it must search those systems 'that are likely to turn up the information requested.'" *Id.* (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Even if a plaintiff does not oppose a motion for summary judgment, "the Court cannot deem [the] motion . . . 'conceded' due to lack of opposition and must, instead, evaluate 'for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Id.* at *6 (quoting *Winston & Strawn LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016)).

## III. ANALYSIS

In considering the USMS's motion, the Court will first consider the adequacy of the supplemental search, will then consider the redactions, and, finally, will address segregability.

A.      **Adequacy of the Search**

"An agency fulfills its obligations under FOIA to conduct an adequate search 'if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.'" *Canning v. U.S. Dep't of State*, 346 F. Supp. 3d 1, 13 (D.D.C. 2018) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F. 2d 321, 325 (D.C. Cir. 1999)). "[T]he adequacy of a search is not determined by the initial results, but rather, by the totality of [a] defendant's efforts to locate and respond to a FOIA request." *Airaj v. United States*, No. 15-983, 2016 WL 1698260, at *7 (D.D.C. Apr. 27, 2016); *see also Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013). "Although no single formula governs every case, the required details often 'include search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search.'" *Shem-Tov v. U.S. Dep't of Justice*, No. 17-2452, 2020 WL 2735613, at *5 (D.D.C. May 25, 2020) (quoting *Ferranti v. ATF*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001)).

To support its motion, the USMS proffers a second declaration from USMS Associate General Counsel Clifford R.R. Krieger. Dkt. 34-1. The second Krieger declaration directly addresses the lacuna in his first declaration, which formed the basis of the Court's previous opinion. To begin, Krieger describes the relevant databases that the USMS maintains.[2] According to Krieger, "[t]he primary electronic database used by the USMS to track information

---

[2] Krieger describes each of the databases determined to be potentially responsive by the contacted divisions, which were in turn identified by the Office of General Counsel Government Information Specialist as housing potentially responsive records. Krieger's database description is sufficient, given that "[t]here is no requirement that an agency search every record system," so long as the agency demonstrates, "with reasonable detail, that the search method [including databases searched]. . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68; *see also Campbell*, 164 F.3d at 28; *Hodge*, 764 F. Supp. 2d 134, 141 (D.D.C. 2011). Here, the Court concludes that the USMS has credibly shown "that no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68.

7

about prisoners is" the Justice Detainee Information Population Management/Prisoner Tracker System or "JDIS," *id.* at 2 (2d Krieger Decl. ¶ 6), which is the same system the USMS searched the first time around, *Flete-Garcia I,* 2020 WL 1695127, at *2. "These records pertain to USMS prisoners who are in USMS custody or have a federal arrest warrant issued[] or are scheduled for a move between detention facilities." Dkt. 34-1 at 2 (2d Krieger Decl. ¶ 6). "If an individual was [or is] in USMS custody, there will be a corresponding record in JDIS," which catalogs each prisoner by his "Prisoner Number" or "USMS Number[]," "a unique identifier . . . only associated with one person." *Id.* at 3 (2d Krieger Decl. ¶¶ 6–7). In addition to JDIS, the USMS also uses the Justice Prisoner and Alien Transportation System or "JPATS" Management Information System ("JMIS") "database to manage prisoners' movements." *See id.* at 3–4 (2d Krieger Decl. ¶¶ 8, 11).

In light of the Court's previous opinion, Krieger "asked the Office of General Counsel, FOIA/[Privacy Act] Unit [("OGC")] to conduct a new search for records responsive to [Plaintiff's] requests." *Id.* at 3 (2d Krieger Decl. ¶ 10). Because the "Government Information Specialist with the OGC Freedom of Information Act/Privacy Act . . . Unit" who handled the first search for Plaintiff's FOIA request was no longer with the USMS, a new Government Information Specialist was assigned to process Plaintiff's requests, and she "identified three divisions . . . within the USMS which had the potential to have" responsive records: POD, JPATS, and the District Office for the District of Massachusetts." *Id.* at 2, 4 (2d Krieger Decl. ¶¶ 5, 11). Kreiger's declaration describes each office and explains why it was identified as possibly housing responsive records.

1.  *POD*

The Prisoner Operations Division often fields prisoner FOIA requests "because it is the division within the USMS which is responsible for the oversight of prisoner operations and therefore, has a heightened likelihood of having . . . a recorded interaction with a prisoner." *Id.* at 4 (2d Krieger Decl. ¶ 12). POD conducted an unfruitful search as part of the USMS's original search. *Id.* (2d Krieger Decl. ¶ 13). "On April 14, 2020, the OGC Government Information Specialist sent an [email] to the POD FOIA inbox inquiring how the original search was conducted," and in response, the Executive Assistant to the Deputy Assistant Directors of POD explained that "the data sought is not the sort of data maintained by POD and that the USMS District Office for the District of Massachusetts would have records regarding dates of prisoner transport for court productions." *Id.* at 4–5 (2d Krieger Decl. ¶ 15) (quotation omitted). As a result, POD did not conduct a new search, but Krieger exchanged emails between April 17 and 21, 2020 with a Chief Inspector in the Office of Detention Operations, POD "to establish how they conduct FOIA searches." *Id.* at 5 (2d Krieger Decl. ¶ 16). He learned that MCI Cedar Junction, although "owned and operated by the Massachusetts Department of Correction," has an agreement with the USMS allowing it to house USMS prisoners and that "USMS District Offices are generally responsible for the records of the prisoners they have or have had in custody when those prisoners are or were going through the judicial process." *Id.*

9

2.     *JPATS*

JPATS "is the unit within [the] USMS which is responsible for long[-]distance transportation of prisoners." *Id.* at 6 (2d Krieger Decl. ¶ 17). As Krieger explains, Plaintiff's "FOIA request was specific to his transportation as a prisoner in USMS custody" and, thus, the OGC Government Information Specialist contacted JPATS and requested that the unit search its records. *Id.* at 5–6 (2d Krieger Decl. ¶ 17). The Assistant Chief of Scheduling for JPATS responded the same day certifying that the unit had searched JMIS, "the database which JPATS uses to store records of the names of prisoners they transport and other information associated with transfers," using Plaintiff's Prisoner Number as the search term, and found no responsive documents. *Id.* at 6 (2d Krieger Decl. ¶ 17).

3.     *District Office for the District of Massachusetts*

"USMS District Offices are responsible for carrying out the day-to-day operations of the USMS, including housing prisoners and transporting them to and from local courts." *Id.* (2d Krieger Decl. ¶ 19). The OGC Government Information Specialist sent Plaintiff's FOIA request to the USMS District Office for the District of Massachusetts "because [Plaintiff] was housed in [that] [d]istrict during the relevant time frame[,] and" the office was "responsible for any transportation of him to and from the District Court, which is the subject of his FOIA request." *Id.* (2d Krieger Decl. ¶ 19).

The Administrative Officer for the USMS District Office in the District of Massachusetts returned a search memorandum on April 14, 2020 "indicating that his office had searched two systems of records using the search term 'Fluvio Flete-Garcia.'" *Id.* (2d Krieger Decl. ¶ 20). The search, which included efforts to locate both electronic and paper records, identified a database spreadsheet listing in chronological order twenty-three times that Plaintiff was

10

transported to court between May 4, 2015 and January 17, 2018. *Id.* at 6–7 (2d Krieger Decl. ¶ 20); Dkt. 36-1 (Ex. A); Dkt. 36-2 at 4 (Ex. B). On April 17, 2020, Krieger called the District Administrative Officer to discuss what the office's search had entailed. *Id.* at 7 (2d Krieger Decl. ¶ 21). The District Administrative Officer informed Krieger that an Investigative Analyst had searched the JDIS database and the Criminal Desk records, "the records . . . under their control [that] were likely to have responsive records." *Id.* Three days later, Krieger called the assigned Investigative Analyst to discuss his search. *Id.* (2d Krieger Decl. ¶ 22). The Investigative Analyst had searched the JDIS database, "limiting his query by the relevant date range and [Plaintiff's] USMS [N]umber," and that search uncovered the transportation spreadsheet. *Id.* (2d Krieger Decl. ¶ 23). The Investigative Analyst had also searched "[email] records for the Operations Desk," which "is responsible for processing prisoner appearance requests and scheduling transportation to the court," and found no emails related to Plaintiff. *Id.* (2d Krieger Decl. ¶ 22). When Krieger noted that the transportation spreadsheet suggested that information relevant to one of Plaintiff's trips had been transmitted via email, the Investigative Analyst reaffirmed that no such record was found in the Operations Desk inbox, notwithstanding that the spreadsheet's notation did suggest that an email should have been transmitted to that inbox. *Id.* at 7–8 (2d Krieger Decl. ¶ 24).

        4.      *Additional Searches by OGC Government Information Specialist*

The OGC Government Information Specialist also searched the JDIS database herself, using "Fluvio Flete-Garcia" and Plaintiff's "Fugitive Identification [N]umber" as the search terms. *Id.* at 8 (2d Krieger Decl. ¶ 25). The search located "the previously disclosed USM-129" from the USMS's original search, as well as a "USMS Subject Report and a USM-312 [Personal History] related to" Plaintiff. *Id.*; *see* Dkt. 36-2 at 5–15 (Ex. B). Although these documents do

11

not concern Plaintiff's transport to the courthouse and are therefore not responsive to his request, the documents were, "out of an abundance of caution," included in the response to Plaintiff. Dkt. 34-1 at 8 (2d Krieger Decl. ¶ 25); *see* Dkt. 36-2 at 5–15 (Ex. B).

On April 22, 2020, the USMS OGC sent the updated search results—consisting of the transportation spreadsheet, the previously disclosed USM-129, the USMS Subject Report, and the USM-312 Personal History—to the USMS District Office for the District of Massachusetts with a request that the office mail the documents to Plaintiff. Dkt. 34-1 at 8 (2d Krieger Decl. ¶ 26). On May 18, 2020, the Administrative Officer in the District Office sent an email to the OGC Government Information Specialist stating that the response was sent to Plaintiff on April 24, 2020 via first class mail without a tracking number. *Id.*; *see* Dkt. 36-2 (Ex. B).

5.     *Analysis of Adequacy*

In most respects, the Krieger declaration "demonstrate[s] beyond material doubt that [the USMS's supplemental] search was reasonably calculated to uncover all relevant documents," *Canning*, 346 F. Supp. 3d at 13 (quotation omitted). In contrast to the record that accompanied the USMS's previous motion for summary judgment, the current record describes the nature and location of the records systems searched. The record also identifies the personnel who conducted the searches, albeit not by name, and explains why the particular divisions contacted were identified as potentially possessing responsive records. The Krieger declaration also offers sufficient detail for the Court to determine the nature of his communications with the divisions that conducted searches and their answers to his inquiries. These details address the deficiency that the Court highlighted in its previous decision. *Flete-Garcia I*, 2020 WL 1695127, at *4; *Shem-Tov*, 2020 WL 2735613, at *5.

In one respect, however, the Court remains unsure whether the supplement search was adequate, and this shortcoming highlights the importance of requiring agencies to disclose the search terms they use. *See Flete-Garcia I*, 2020 WL 1695127, at *4. As the careful reader might have noticed by now, the Plaintiff in this case is *Fulvio* Flete-Garcia, but, according to the Krieger declaration, the USMS District Office in the District of Massachusetts and the OGC Government Information Specialist used the name "*Fluvio* Flete-Garcia" when they conducted their searches. Dkt. 34-1 at 6, 8 (2d Krieger Decl. ¶¶ 20, 25) (emphasis added). The Court cannot discern whether the Krieger declaration merely contains an error, or whether the searches were also incorrect. Nor can the Court determine whether Plaintiff's last name was sufficiently unique that use of it, alone, would have located any responsive records or whether only those records containing his entire name (first and last) were called for by the search. And, although use of Plaintiff's prisoner or fugitive number might have been sufficient for the searches of the JDIS database, other searches relied exclusively on Plaintiff's name. This may explain why a search of the email records for the Massachusetts "Operations Desk" failed to locate any emails relating to Plaintiff, even though the one record that was located as a result of the supplemental search included a notation reflecting that a movement request relating to Plaintiff was received by email. *Id.* at 7–8 (2d Krieger Decl. ¶¶ 22, 24). In any event, the uncertainty regarding the search term precludes the Court from entering summary judgment at this time.

Accordingly, the Court will deny the USMS's motion for summary judgment with respect to the adequacy of the search.

**B.     Withholdings**

Turning to the redactions that the USMS made to the records that it did locate and release, the Court is persuaded that the USMS acted within the bounds of FOIA. The USMS

13

bears the burden of "describ[ing] the requested documents and 'the justifications for nondisclosure with reasonably specific detail [and] demonstrat[ing] that the information withheld logically falls within the claimed exemption.'" *Pronin v. Fed Bureau of Prisons*, No. 17-1807, 2019 WL 1003598, at *3 (D.D.C. Mar. 1, 2019) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). An agency can prevail on summary judgment only if its declarations "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987). As noted above, however, Plaintiff has failed to respond to the motion, leaving the Court to decide whether the USMS's uncontroverted evidentiary showing suffices.

The USMS made redactions pursuant to FOIA Exemptions 6, 7(C), 7(E), and 7(F). Because the Court concludes that the USMS properly invoked Exemptions 6, 7(C) and 7(E), and because those exemptions, taken together, cover all of the redactions, the Court need not address Exemption 7(F).

Most of the material at issue was withheld under Exemptions 7(C) and 7(E), so the Court starts there. As an initial matter, Exemption 7 applies only to records "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *Campbell*, 164 F.3d at 31; *Flete-Garcia I*, 2020 WL 1695127, at *6. In *Flete-Garcia I*, the Court noted that the USMS's principal function is law enforcement, and thus its assertions that redacted records were compiled for law enforcement purposes deserve "some deference." 2020 WL 1695127, at *6. And, here, as in *Flete-Garcia I*, the USMS posits that the responsive records were compiled for law enforcement purposes because the agency generated the records "during the [Department of Justice]'s criminal investigation and prosecution of Plaintiff" and the records "pertain to the custody of

14

Plaintiff." Dkt. 34 at 11. The Court agrees that the records fall squarely within the definition of records compiled for law enforcement. *See McCall v. U.S. Marshals Serv.*, 36 F. Supp. 2d 3, 6 (D.D.C. 1999) (finding that documentation of Marshals escorting prisoners within a federal courthouse were compiled for law enforcement purposes). The USMS, accordingly, easily clears the first hurdle to invoking Exemption 7.

Exemption 7(C) protects records from disclosure if their release "'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Campbell*, 164 F.3d at 33 (quoting 5 U.S.C. § 552(b)(7)(C)). To make that determination, the Court "must balance the public interest in disclosure against the [privacy] interest[s] Congress intended the Exemption to protect." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989). In this case, the USMS redacted (1) the names of law enforcement officials from the transportation spreadsheet; (2) the names of associates of Plaintiff from the Subject Report; (3) the names that the Court previously approved for redaction in the USM-129; and (4) the names of several individuals in the USM-312 Personal History, including the names of persons to be kept separate from Plaintiff, the name of a law enforcement official who administered a DNA test, the name of an enforcement officer and contact information, an unidentified address and phone number, and the name of one of Plaintiff's associates. Dkt. 34-1 at 10–11 (2d Krieger Decl. *Vaughn* index). Each of these redactions was permissible for the same reasons the Court previously sustained the USMS's redactions to the USM-129. "[T]he privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." *Nat'l Ass'n of Ret. Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). "On the other side of the balance, Plaintiff does not identify *any* public interest in release of the withheld information." *Flete-Garcia I*, 2020 WL 1695127, at *7. "Where there is *no* asserted public

15

interest, even the slightest privacy interest will prevent disclosure under Exemption 7(C)." *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008). Because the USMS has proffered a legitimate privacy interest supporting the redactions and because Plaintiff has failed to identify any countervailing interest, the Court concludes that the Exemption 7(C) redactions were permissible.

The USMS also invoked Exemption 7(E), which permits the withholding of law enforcement records

> [t]o the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). This exemption "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). It does not "require[e] a highly specific burden of showing how the law will be circumvented" but rather, "only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (quotation omitted).

Beyond any withholdings already covered by Exemption 7(C), the USMS employed Exemption 7(E) to withhold "internal data encoding" in each of the responsive records. Dkt. 34-1 at 10–11 (2d Krieger Decl. *Vaughn* index). The redactions include "information such as internal URLs, codes, and internal identifying numbers [that] could assist unauthorized parties in deciphering the meaning of the codes and numbers, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of these databases." *Id.* at 9 (2d Krieger Decl. ¶ 31). This information, the USMS contends "would not assist the public

in understanding how the agency is carrying out its statutory responsibilities" but could "permit people seeking to violate the law to gain sensitive knowledge and take preemptive steps to counter actions taken by [the] USMS during investigatory operations." Dkt. 34 at 15.  That explanation is sensible and, in the Court's view, clears the "relatively low bar" of withholding under Exemption 7(E).  *Blackwell*, 646 F.3d at 42; *see also Shem-Tov*, 2020 WL 2735613, at *12 (finding that withholding "internal website/url network path" was justified under 7(E)).

Exemptions 7(C) and 7(E) cover all of the redactions at issue, save one: the USMS withheld "[a]n unknown name" on the transportation spreadsheet pursuant to Exemptions 6 and 7(F).  Dkt. 34-1 at 10 (2d Krieger Decl. *Vaughn* index).  It is unclear why the USMS did not invoke Exemption 7(C) with respect to this name, but, in any event, the Court is persuaded that Exemption 6 also applies.  That exemption shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  In assessing withholdings under Exemption 6, the Court "must first determine whether 'disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest.'"  *Pejouhesh v. U.S. Postal Serv.*, No. 17-1684, 2019 WL 1359292, at *5 (D.D.C. Mar. 26, 2019) (quoting *Horner*, 879 F.2d at 874)).  "If the agency clears that first hurdle, the Court must 'balance the privacy interest in non-disclosure against the public interest' in disclosure."  *Id.* (quoting *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1050 (D.C. Cir. 2009)).

Here, the name at issue appeared on a printout of transportation dates.  Although the Court would have benefited from some additional information about the "unknown name," it would seem that the USMS lacks that information.  But, even without the detail, it is safe to assume that the unknown person, like everyone else identified on the transportation printout, has

17

some non-de minimis privacy interest in his or her public association with the USMS transportation log. And, once again, Plaintiff has failed to offer *any* countervailing interest in public disclosure of this person's name. Thus, although a closer question given the evidentiary gap, the Court concludes that the USMS has also carried its burden of showing that this disclosure would constitute "a clearly unwarranted invasion of personal privacy" and that the agency permissibly invoked Exemption 6. *See* 5 U.S.C. § 552(b)(6).

The Court will, accordingly, grant summary judgment in favor of the USMS with respect to these withholdings.

**C.     Segregability**

As the Court observed in *Flete-Garcia I*, "[w]ith regard to any document an agency believes falls under a FOIA exception, the agency must 'separate[] the exempt from the non-exempt portions of the document[] and produce[] the relevant non-exempt information.'" *Flete-Garcia I*, 2020 WL 1695127, at *7 (quoting *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 296 (D.D.C. 2007)). "The Court, for its part, [must] 'make specific findings of segregability.'" *Id.* (quoting *Stolt-Nielsen Transp. Grp., Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008)). In *Flete-Garcia I*, the Court held that the USMS had satisfied the segregability requirement with respect to the records located and released in part because "the only information withheld [was] the personal information discussed above." *Id.* The same reasoning leads the Court to conclude that all reasonably segregable information relating to the newly discovered records was released. The redactions are limited to the personal information and internal encoding analyzed and found to be permissible above.

**CONCLUSION**

The Court, accordingly, **GRANTS** in part and **DENIES** in part the USMS's motion for summary judgment, Dkt. 34. The Court hereby **GRANTS** summary judgment in favor of the USMS in all respects, except the adequacy of those searches that misspelled Plaintiff's name. After repeating those searches using the correct spelling or confirming that the searches, in fact, used the correct spelling, the USMS may renew its motion.

    **SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 24, 2021